Filed 10/12/2021 5:29 PM
Barbara Sucsy
Lubbock County - 237th District Court
Lubbock County, Texas

NO. DC-2021-CV-0370 ag

| | | |
|---|---|---|
| **SHANNON CORBETT,** **Plaintiff,** | § | **IN THE** 237th |
| | § | |
| **vs.** | § | **DISTRICT COURT** |
| **TEXAS TECH UNIVERSITY HEALTH SCIENCES CENTER,** **Defendant.** | § | **LUBBOCK COUNTY, TEXAS** |

**PLAINTIFF'S ORIGINAL PETITION**

**TO THE HONORABLE JUDGE OF SAID COURT:**

**COMES NOW, Shannon Corbett** (hereinafter "Plaintiff") by and through her respective counsel of record, and files this Original Complaint as against **Texas Tech University Health Sciences Center** (hereinafter "Defendant"). In support of this Complaint, Plaintiff would proffer and show this Honorable Court as follows:

## I. PARTIES AND SERVICE

**1.** Plaintiff is a citizen of the United States and the State of Texas and resides in Lubbock County, Texas.

**2.** Defendant Texas Tech University Health Sciences Center is an institution of higher education within the State of Texas and maintains a principal place of business in Lubbock, Texas at the address of 1508 Knoxville Ave., Ste. 301, Lubbock, Texas 79409. Defendant may be served with citation by serving Eric Bentley at 1508 Knoxville Ave., Ste. 301, Lubbock, Texas 79409 or wherever he may be found.

## II. CONDITIONS PRECEDENT

**3.** On or about March 31, 2020, Plaintiff filed charges of discrimination with the Equal Employment Opportunity Commission (hereinafter "EEOC") against Defendant alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*. (hereinafter

"Title VII").

4. The EEOC charges were dual-filed with the Texas Workforce Commission, Civil Rights Division (hereinafter "TWCCRD") alleging violations of the Chapter 21 of the Texas Labor Code, the Texas Commission on Human Rights Act (hereinafter "TCHRA") against Defendant.

5. Plaintiff's Complaint is filed within ninety days of Plaintiff's receipt of the Equal Employment Opportunity Commission's issuance of a right to sue letter.[1]

6. A notice of the right to file a civil action has been requested from the TWCCRD.[2]

7. Any and all other prerequisites to the filing of this suit have been met.

## III. Statement on Jurisdiction and Venue

8. This court has personal jurisdiction over Defendant because the Defendant is located in this state.

9. Venue is proper in this County because a substantial part of the events giving rise to the allegations in this Complaint occurred within this County.

## IV. Statement of Pertinent Facts

10. Defendant operates an anesthesiology residency program (hereinafter "ARP"), the mission and purpose of which is educational. Residents of the ARP are employed by Defendant.

11. Plaintiff was a resident of the ARP. At all relevant times, Defendant employed Plaintiff, controlled the terms and conditions of Plaintiff's employment, and qualifies as an employer under all relevant statutes.

12. Dr. Alan Santos became the Director of the ARP in 2017. Dr. Santos was responsible for developing and implementing the academic and clinical program for anesthesiology residents. Dr. Santos was a supervisor with immediate or higher authority over Plaintiff.

---

[1] Exhibit A
[2] Exhibit B

**13.** When Dr. Santos became the Director of the ARP, Plaintiff was one of two female residents in the ARP. In the 2018-2019 academic year, Plaintiff became the only female resident in the ARP. The other female resident informed Plaintiff that she was leaving the ARP because she had been subjected to similar treatment as detailed below.

**14.** In Plaintiff's initial interaction with Dr. Santos, Dr. Santos informed Plaintiff in front of other ARP residents, "Women don't belong in medicine. I will see to it that you do not finish here and won't have a career in medicine. Women should be nurses because they can't handle the demanding schedule of medicine."

**15.** In front of other ARP residents, Dr. Santos persistently addressed Plaintiff as "Missy" or snapped his fingers at her as if beckoning a dog. Dr. Santos addressed male ARP residents as "Doctor [Last Name]."

**16.** During clinical training, Dr. Santos offered guidance to male ARP residents; Dr. Santos would not provide female ARP residents opportunities to ask questions or offer guidance.

**17.** During clinical training, Dr. Santos allowed male ARP residents to begin treating patients without his supervision; Plaintiff was required to wait for Dr. Santos to enter a patient's room before she was allowed to begin a patient's treatment.

**18.** On one such occasion, Plaintiff expressed concern about placing an arterial line on a patient since it was her first attempt. Plaintiff was unable to place the line. Rather than offering guidance and train Plaintiff as he did with male ARP residents, Dr. Santos yelled at Plaintiff about her inability to place the line, pushed Plaintiff away from the patient, placed the line, and told Plaintiff "I am going to have to kill you!"

**19.** Plaintiff sought guidance from Dr. Santos when Plaintiff's subordinate verbally accosted her during clinical training. Dr. Santos informed Plaintiff, "You are a female, so you are going to

take more crap from everyone who is jealous. And it is not right. But it is the way it is and you just have to deal with it until you move on."

**20.** Dr. Santos accused Plaintiff of drug and alcohol abuse on numerous occasions, including nine times prior to her June 2018 American Board of Anesthesiology (hereinafter "ABA") Basic Exam. After these nine allegations, Plaintiff took drug tests. Plaintiff presented the results of the negative drug tests to Dr. Santos and requested an apology. Dr. Santos informed Plaintiff that he did not apologize to women.

**21.** The Defendant's Office of Graduate Medical Examination (hereinafter "GME") and Dr. Santos requested that Dr. Corbett undergo an Employee Assistance Program (hereinafter "EAP") assessment prior to resuming clinical training due to purported despondent Facebook posts. Dr. Santos personally escorted Plaintiff to the EAP and alleged Plaintiff was abusing alcohol.

**22.** During ARP resident lectures, Dr. Santos would respond to incorrect answers from Plaintiff with a retort of "You're disappointing daddy."

**23.** The ABA in-training examination (hereinafter "ABA ITE") is a computer-based examination of 200 multiple choice questions used to prepare residents for the ABA Basic and Advanced examinations.

**24.** Prior to the ABA ITE, Dr. Santos permitted male ARP residents to copy questions from the ABA ITE to make an answer sheet that they could utilize as a "cheat sheet" during the exam. Plaintiff received a copy of the "cheat sheet" after the ABA ITE.

**25.** The ABA Basic Exam consists of 200 questions that require the application of knowledge rather than a simple recall of factual information. The questions often include a brief clinical vignette followed by a lead-in question and four response options. Accordingly, providing guidance and permitting residents to ask questions during clinical training is critical to passing the

ABA Basic Exam.

**26.** Plaintiff asked Dr. Santos questions about the ABA Basic Exam. Dr. Santos stated "It's all in the book. Just read the book."

**27.** Plaintiff scheduled time to discuss "the book" with Dr. Santos and receive assistance on passing the ABA Basic Exam, but Dr. Santos repeatedly told her to reschedule the session. Plaintiff never received further instruction from Dr. Santos than "Just read the book."

**28.** During her preparation for the ABA Basic Exam, Dr. Santos would repeatedly interrupt her attempts to study. The day prior to the June 2019 ABA Basic Exam, Dr. Santos unexpectedly required Plaintiff to attend a mandatory meeting and sign her Year-End Resident Milestone Summary and the Clinical Competence Committee Survey, then he ended the meeting by further berating her and telling her that she would never pass. While Plaintiff studied in an office next to Dr. Santos' office prior to the November 2019 ABA Basic Exam, Dr. Santos would pass by Plaintiff's office and inform her that she was going to fail and access the software Plaintiff was utilizing to study to ridicule Plaintiff for answering questions incorrectly.

**29.** Dr. Santos' conduct resulted in Plaintiff experiencing consistent hypervigilance, hyperarousal, emotional distress, excessive worry, anxiety, feelings of helplessness, and difficulty concentrating in her work environment. This ultimately led Plaintiff to score poorly on the ABA Basic Exam. Despite receiving satisfactory grades that qualified her for the ARP, Defendant took the disciplinary action of recommending Plaintiff for dismissal from the ARP on December 11, 2019. Male ARP residents who did not pass the ABA Basic Exam but received satisfactory grades were not recommended for dismissal from the ARP.

**30.** Following the recommendation for dismissal, four of Defendant's employees offered to write letters of recommendation or serve as references.

**31.** Plaintiff had previously reported Dr. Santos' conduct to the GME on multiple occasions prior to December 11, 2019. However, the GME did not take undertake a formal investigation of Plaintiff's complaints. On or about January 27, 2020, the Office of Equal Opportunity at Texas Tech University (hereinafter "OEO"), a purportedly neutral party, began a perfunctory investigation of gender discrimination by Dr. Santos after Plaintiff filed a complaint. Plaintiff participated in the OEO investigation. The OEO contacted one person from a list of fourteen (14) corroborating witnesses that Plaintiff provided to the OEO.

**32.** On or about March 31, 2020, Plaintiff filed charges of discrimination with the EEOC and TWCCRD.

**33.** After the Plaintiff filed her charges of discrimination with the EEOC and TWCCRD and the OEO closed its investigation, the four employees that offered to write letters of recommendation or serve as references declined to speak to Plaintiff.

**34.** Plaintiff described Dr. Santos' conduct during her appeal of her dismissal from the residency program. The Associate Director of the ARP made detailed assertions to the ad hoc appeal subcommittee regarding the substantive investigation by the OEO, including that Plaintiff's complaints were fully investigated and the purported number of people interviewed, as well as their employment status and gender. Plaintiff was and has not been provided with any materials to substantiate the Associate Director's bald assertions.

**35.** Despite the disclosure of information in the OEO investigation by the Associate Director of the ARP, the Texas Tech University System ("TTUS" herein) prevented Plaintiff from providing materials from the OEO investigation to the EEOC and TWCCRD. TTUS successfully requested the Honorable Ken Paxton to withhold the OEO investigation materials from public disclosure because TTUS "reasonably anticipated litigation" on March 31, 2020.

**36.** The ad hoc appeal subcommittee upheld the recommendation of Plaintiff's dismissal from the ARP and considered the OEO investigation in its deliberations. Plaintiff was dismissed from the residency program on May 11, 2020.

**37.** Plaintiff attempted to apply to other residency programs. The application process requires Plaintiff to verify that she was a resident of Defendant and the dates of her residency. Residency programs require Defendant to verify this information. A reference checking company employed by Plaintiff determined that Defendant has been refusing to verify to prospective employers that Plaintiff was a resident of Defendant as well as the dates of her residency.

## V. Claims for Relief

**38.** Plaintiff incorporates by reference all of the allegations, statements, and references alleged as set forth above.

**Claim 1: Hostile Work Environment Pursuant to Title VII**

**39.** For a hostile work environment claim under Title VII, the plaintiff must show: (1) she belongs to a protected group; (2) she was subjected to unwelcome sexual harassment; (3) the harassment was based on sex; (4) the harassment was sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive working environment; and (5) the employer knew or should have known and failed to take prompt remedial action.[3] When the alleged harasser is a supervisor with immediate or higher authority over the plaintiff, the plaintiff need only meet the first four elements of the test.[4]

**40.** Plaintiff belongs to a protected group as a female.

**41.** Plaintiff was subjected to unwelcome sexual harassment by Dr. Santos, including but not

---

[3] *Garvin v. Sw. Corr., L.L.C.*, 391 F. Supp. 3d 640, 650–51 (N.D. Tex. 2019) *citing Watts v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir. 1999).

[4] *Garvin v. Sw. Corr., L.L.C.*, 391 F. Supp. 3d 640, 651 (N.D. Tex. 2019) *citing Watts v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir. 1999).

limited to the conduct listed in paragraphs 16-24, 26, and 28-30.

**42.** The harassment was based on sex.

**43.** The harassment was sufficiently severe or pervasive so as to alter the conditions of Plaintiff's employment. A reasonable person would find the work environment hostile or abusive. Plaintiff perceived the environment as abusive. Due to Dr. Santos' conduct, Plaintiff's work environment consisted of Plaintiff experiencing hypervigilance, hyperarousal, emotional distress, excessive worry, anxiety, feelings of helplessness, and difficulty concentrating.

**Claim 2: Hostile Environment Sexual Harassment Pursuant to TCHRA**

**44.** For a hostile work environment claim under the TCHRA, the plaintiff must show: (1) the employee belongs to a protected class; (2) the employee was subject to unwelcome sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take adequate remedial action.[5] When the alleged harassment is committed by the plaintiff's supervisor, the plaintiff need only satisfy the first four elements.[6]

**45.** Plaintiff belongs to a protected group as a female.

**46.** Plaintiff was subject to unwelcome sexual harassment by Dr. Santos, including but not limited to the conduct listed in paragraphs 16-24, 26, and 28-30.

**47.** The harassment was based on sex.

**48.** The harassment affected a term, condition, or privilege of Plaintiff's employment in that it created an abusive working environment.[7] Dr. Santos' conduct created an environment that a reasonable person would find hostile or abusive and that Plaintiff perceived as hostile or abusive.

---

[5] *County of El Paso v. Aguilar*, 600 S.W.3d 62, 86–87 (Tex. App.—El Paso 2020, no pet.).
[6] *Alief Indep. Sch. Dist. v. Brantley*, 558 S.W.3d 747, 757 (Tex. App.—Houston [14th Dist.] 2018, pet. denied).
[7] *Mayfield v. Tarrant Reg'l Water Dist.*, 467 S.W.3d 706, 713 (Tex. App.—El Paso 2015, no pet.).

Due to Dr. Santos' conduct, Plaintiff's work environment consisted of Plaintiff experiencing hypervigilance, hyperarousal, emotional distress, excessive worry, anxiety, feelings of helplessness, and difficulty concentrating.

**Claim 3: Gender Discrimination Pursuant to Title VII**

**49.** For a gender discrimination claim under Title VII, the plaintiff must show that: (1) she was a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) after his adverse employment action, he was replaced by someone not a member of the protected class or that others similarly situated and outside of the protected class were more favorably treated.[8]

**50.** Plaintiff was a member of a protected class as a female.

**51.** Although Plaintiff did not pass the ABA Basic Exam, she was qualified for the position because she received satisfactory grades that qualified her for the ARP.

**52.** Plaintiff suffered an adverse employment action when she was recommended for dismissal from the ARP.

**53.** Male ARP residents who did not pass the ABA Basic Exam but received satisfactory grades were not recommended for dismissal from the ARP.

**Claim 4: Gender Discrimination Pursuant to TCHRA**

**54.** For a gender claim under the TCHRA, a plaintiff must show that she: (1) is a member of a protected class, (2) was qualified for her position, (3) was subject to an adverse employment action, and (4) was treated less favorably than similarly situated persons outside of the protected class.[9]

**55.** Plaintiff was a member of a protected class as a female.

---

[8] *Garvin v. Sw. Corr., L.L.C.*, 391 F. Supp. 3d 640, 654 (N.D. Tex. 2019).
[9] *Univ. of Tex. M.D. Anderson Cancer Ctr. v. Eltonsy*, 451 S.W.3d 478, 483 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

**56.** Although Plaintiff did not pass the ABA Basic Exam, she was qualified for the position because she received satisfactory grades that qualified her for the ARP.

**57.** Plaintiff suffered an adverse employment action when she was recommended for dismissal from the ARP.

**58.** Male ARP residents who did not pass the ABA Basic Exam but received satisfactory grades were not recommended for dismissal from the ARP.

**Claim 5: Retaliation Pursuant to Title VII**

**59.** For a retaliation claim under Title VII, the plaintiff must show: (1) that she engaged in activity protected by Title VII; (2) that she suffered an adverse employment action; and (3) that a causal connection exists between the protected activity and the adverse employment action.[10]

**A.**

**60.** Plaintiff engaged in activity protected by Title VII when she participated in the OEO investigation and filed charges of discrimination with the EEOC and TWCCRD.

**61.** Plaintiff suffered an adverse employment action when four of Defendant's employees withdrew their offers to write letters of recommendation.

**62.** A causal connection exists between the protected activity and the adverse employment action because Defendant's employees withdrew their offers to write letters of recommendation after Plaintiff participated in the OEO investigation and filed charges of discrimination with the EEOC and TWCCRD.

**B.**

**63.** Plaintiff engaged in activity protected by Title VII when she filed a charge with the OEO and participated in the OEO investigation.

---

[10] *Garvin v. Sw. Corr., L.L.C.*, 391 F. Supp. 3d 640, 650–51 (N.D. Tex. 2019).

**64.** Plaintiff suffered an adverse employment action when the ad hoc appeal subcommittee upheld the recommendation of Plaintiff's dismissal from the ARP.

**65.** A causal connection exists between the protected activity and the adverse employment action because the committee considered the OEO investigation in its deliberations and the Associate Director of the ARP made representations to the committee that gave disproportionate veracity to the opaque OEO investigation.

**C.**

**66.** Plaintiff engaged in activity protected by Title VII when she filed charges of discrimination with the EEOC and TWCCRD.

**67.** Plaintiff suffered an adverse employment action when Defendant refused to verify to prospective employers that Plaintiff was a resident of Defendant and as well as the dates of her residency.

**68.** A causal connection exists between the protected activity and the adverse employment action because Defendant refused to verify to prospective employers that Plaintiff was a resident of Defendant and as well as the dates of her residency after Plaintiff filed charges of discrimination with the EEOC and TWCCRD.

**Claim 6: Retaliation Pursuant to TCHRA.**

**69.** For a retaliation claim under the TCHRA, the plaintiff must show that: (1) she engaged in an activity protected by the TCHRA, (2) an adverse employment action occurred, and (3) there exists a causal link between the protected activity and the adverse action.[11]

**A.**

**70.** Plaintiff engaged in activity protected by the TCHRA when she participated in the OEO

[11] *Univ. of Tex. M.D. Anderson Cancer Ctr. v. Eltonsy,* 451 S.W.3d 478, 484 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

investigation and filed charges of discrimination with the EEOC and TWCCRD.

**71.** Plaintiff suffered an adverse employment action when four of Defendant's employees withdrew their offers to write letters of recommendation.

**72.** A causal connection exists between the protected activity and the adverse employment action because Defendant's employees withdrew their offers to write letters of recommendation after Plaintiff participated in the OEO investigation and filed charges of discrimination with the EEOC and TWCCRD.

**B.**

**73.** Plaintiff engaged in activity protected by the TCHRA when she filed a charge with the OEO and participated in the OEO investigation.

**74.** Plaintiff suffered an adverse employment action when the ad hoc appeal subcommittee upheld the recommendation of Plaintiff's dismissal from the ARP.

**75.** A causal connection exists between the protected activity and the adverse employment action because the committee considered the OEO investigation in its deliberations and the Associate Director of the ARP made representations to the committee that gave disproportionate veracity to the opaque OEO investigation.

**C.**

**76.** Plaintiff engaged in activity protected by the TCHRA when she filed charges of discrimination with the EEOC and TWCCRD.

**77.** Plaintiff suffered an adverse employment action when Defendant refused to verify to prospective employers that Plaintiff was a resident of Defendant and as well as the dates of her residency.

**78.** A causal connection exists between the protected activity and the adverse employment action because Defendant refused to verify to prospective employers that Plaintiff was a resident

of Defendant and as well as the dates of her residency after Plaintiff filed charges of discrimination with the EEOC and TWCCRD.

## VI. Prayer and Request for Relief

**79.** Plaintiff incorporates by reference all of the foregoing.

**80.** Plaintiff, in accordance with the foregoing, prays to this Honorable Court to grant Plaintiff the following remedies for damages incurred by Defendant's tortious actions as herein described:

**Request for Relief Pursuant to Title VII**

**81.** Plaintiff sustained the following damages as a result of the actions and/or omissions of Defendant described hereinabove:

a. All reasonable and necessary Attorney's fees incurred by or on behalf of Plaintiff;

b. Back pay from the date that Plaintiff was denied equal pay for equal work and interest on the back pay in an amount to compensate Plaintiff as the Court deems equitable and just;

c. All reasonable and necessary costs incurred in pursuit of this suit;

d. Emotional pain;

e. Expert fees as the Court deems appropriate;

f. Front pay in an amount the Court deems equitable and just to make Plaintiff whole;

g. Inconvenience;

h. Pre and Post judgment interest;

i. Loss of enjoyment of life;

j. Mental anguish in the past;

k. Mental anguish in the future;

l. Reasonable medical care and expenses in the past. These expenses were incurred by Plaintiff and such charges are reasonable and were usual and customary charges for such services in Lubbock County, Texas and Lubbock County, Texas;

m. Reasonable and necessary medical care and expenses which will in all reasonable probability be incurred in the future;

n. Loss of earnings in the past;

o. Loss of earning capacity which will, in all probability, be incurred in the future;

p. Loss of benefits;

q. Humiliation;

r. Injury to reputation; and

s. Such other and relief and remedy as this Honorable Court shall adjudge as proper.

**Request for Relief Pursuant to TCHRA**

**82.** Plaintiff sustained the following damages as a result of the actions and/or omissions of Defendant described hereinabove:

a. All reasonable and necessary Attorney's fees incurred by or on behalf of Plaintiff;

b. Back pay from the date that Plaintiff was denied equal pay for equal work and interest on the back pay in an amount to compensate Plaintiff as the Court deems equitable and just;

c. All reasonable and necessary costs incurred in pursuit of this suit;

d. Emotional pain;

e. Expert fees as the Court deems appropriate;

f. Front pay in an amount the Court deems equitable and just to make Plaintiff whole;

g. Inconvenience;

h. Pre and Post judgment interest;

i. Loss of enjoyment of life;

j. Mental anguish in the past;

k. Mental anguish in the future;

l. Reasonable medical care and expenses in the past. These expenses were incurred by

Plaintiff and such charges are reasonable and were usual and customary charges for such services in Lubbock County, Texas and Lubbock County, Texas;

m. Reasonable and necessary medical care and expenses which will in all reasonable probability be incurred in the future;

n. Loss of earnings in the past;

o. Loss of earning capacity which will, in all probability, be incurred in the future;

p. Loss of benefits;

q. Humiliation;

r. Injury to reputation; and

s. Such other and relief and remedy as this Honorable Court shall adjudge as proper.

**Request for Exemplary Damages Pursuant to Title VII and TCHRA**

**83.** Plaintiff would further show that the acts and omissions of Defendant complained of herein were committed with malice or reckless indifference to the protected rights of the Plaintiff. In order to punish said Defendant for engaging in unlawful business practices and to deter such actions and/or omissions in the future, Plaintiff also seeks recovery from Defendant for exemplary damages.

Respectfully submitted,

**MATTHEW HARRIS LAW, PLLC**
1001 Main Street, Suite 200
Lubbock, Texas 79401-3309
FrontDesk@MatthewHarrisLaw.com
Tel: (806) 702-4852 | Fax: (800) 985-9479

By: ______________________________
Carrie A. Harris, Esq.
State Bar No. 24094705
Attorneys for Plaintiffs

**PLAINTIFF HEREBY DEMANDS TRIAL BY JURY**

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Emily Walterscheid on behalf of Carrie Harris
Bar No. 24094705
Emily@matthewharrislaw.com
Envelope ID: 58120198
Status as of 10/13/2021 7:56 AM CST

Associated Case Party: Shannon Corbett

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Carrie Harris | | FrontDesk@matthewharrislaw.com | 10/12/2021 5:29:33 PM | SENT |