UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

SHANNON CORBETT,

     Plaintiff,

v.

TEXAS TECH UNIVERSITY HEALTH
SCIENCES CENTER,

     Defendant.

No. 5:21-CV-281-H

## MEMORANDUM OPINION AND ORDER

Plaintiff Dr. Shannon Corbett was a student in Texas Tech University Health Sciences Center's Anesthesiology Residency Program. As part of the program, she was required to pass a standardized exam before entering the fourth year of residency. After failing the exam four times, Dr. Corbett was recommended for dismissal. She filed a complaint with Texas Tech's Office of Equal Opportunity and appealed the dismissal recommendation, which was ultimately upheld. Dr. Corbett then filed suit, bringing claims of sex discrimination, hostile workplace harassment, and retaliation.

The Court grants summary judgment in part and denies it in part. The Court grants summary judgment as to Dr. Corbett's sex discrimination because she fails to meet two elements of her prima facie case. The Court also grants summary judgment as to Dr. Corbett's retaliation claims because she cannot meet the prima facie case for either claim and failed to establish pretext. The Court, however, denies summary judgment as to Dr. Corbett's hostile workplace harassment claim because she has pointed to at least some evidence sufficient to create a genuine issue of material fact as to whether the conduct against her was severe or pervasive enough to alter the conditions of her employment.

## 1.     Factual and Procedural Background

### A.     TTUHSC's Anesthesiology Residency Program

Defendant Texas Tech University Health Sciences Center (TTUHSC)—a state-supported institution that is part of the Texas Tech University System—maintains an Anesthesiology Residency Program (ARP).  *See* Dkt. No. 19 at 2.  During the first year of the ARP, residents receive "broad-based clinical training."  *Id.*  That training is followed by three clinical (CA-1, CA-2, and CA-3) or post-graduate years (PGY) "during which residents receive training focused on the clinical application of anesthesiology and its various subspecialty rotations."  *Id.*

Throughout the ARP, residents are required to "meet certain performance requirements and clinical competency standards" (*id.*) and must pass certain medical licensure exams, including the American Board of Anesthesiology (ABA) Basic Exam, within certain deadlines in order to advance to the next post-graduate year of the program (*id.* at 3).  The ABA Basic Exam "is a computer-based multiple-choice test used to assess a resident's mastery of topics."  *Id.* at 34.  According to the ABA, if a resident fails the ABA Basic Exam for the first time, that resident can retake the exam at the next opportunity.  *Id.* However, "a resident who fails the ABA Basic Exam for the second time is automatically marked as 'unsatisfactory' for the reporting period by the ABA," and the ARP "has no authority to change the 'unsatisfactory' marking.  *Id.*  "A resident cannot graduate from the residency training program without passing the ABA Basic Exam."  *Id.*  "Successful passage of the ABA Basic Exam is a requirement for advancement in the anesthesiology education continuum as failure reflects a deficit in essential medical knowledge required for an

anesthesiologist." *Id.*  The ABA Basic Exam has a national first-attempt pass rate of 91 percent.  *Id.* at 4.

### B.    Dr. Corbett's Career at TTUHSC

Dr. Shannon Corbett began her employment with TTUHSC as part of the four-year ARP in July 2016.  Dkt. No. 25-1 at 2.  While in the program, Dr. Corbett attempted and failed to pass the ABA Basic Exam in June 2018 and November 2018, scoring in the bottom 1 percent on both attempts.  Dkt. No. 19 at 36–37.

In early 2019, Dr. Corbett and Dr. Alan Santos, the Program Director of the ARP at the time, signed an amendment to Dr. Corbett's 2018–2019 Graduate Medical Education Program Agreement.  *Id.* at 23.  The amendment specified that "the [ABA] requires passage of the ABA Basic Exam, the first of three staged exams for ABA Board Certification, prior to promotion to the CA-3 (PGY 4) year."  *Id.*  It noted that Dr. Corbett had "failed two attempts of the ABA Basic Exam and received an 'Unsatisfactory' report to the ABA for the July–December 2018 reporting period."  *Id.*  It also stated "that a third failed attempt on the ABA Basic Exam will demonstrate a significant deficiency in medical knowledge and will result in a recommendation for dismissal from the program."  *Id.*

Dr. Corbett took the exam in June 2019 and failed once again.  *Id.* at 38.  She scored in the bottom 3 percent.  *Id.*  Consequently, Dr. Corbett also received an "Unsatisfactory" report to the ABA for the January–June 2019 reporting period, which details that she had failed the exam three times.  Dkt. No. 25-1 at 109.

Rather than recommending that Dr. Corbett be dismissed from the program, however, Dr. Santos and Dr. Corbett signed another amendment to the 2019–2020 Graduate Medical Education Program Agreement in July 2019.  Dkt. No. 19 at 24–25.  The

– 3 –

amendment included similar language, noting that Dr. Corbett must pass the ABA Basic Exam before being promoted to the CA-3 (PGY 4) year. *Id.* It also explained, "[T]he TTUHSC Anesthesia Faculty have afforded a fourth and final attempt to pass the ABA [B]asic Exam. During the period leading up to the test date in November 2019, you will serve as a resident performing research, with an assigned faculty mentor, as well as attend all non-clinical residency activities, but all clinical privileges are withheld." *Id.* at 24. The amendment also warned "that a fourth failed attempt on the ABA Basic Exam will demonstrate a significant deficiency in medical knowledge and will result in an immediate recommendation for dismissal from the program." *Id.*

Dr. Santos "created, funded, and placed Dr. Corbett in a paid 6-month research position without any clinical duties or on-call hours," and he connected her "with a mentor to help her with a study plan to increase her chance for success on this fourth attempt." *Id.* at 34–35. Dr. Corbett was also provided with a question bank to help her study (*see* Dkt. No. 25-1 at 37) and access to other TTUHSC resources (Dkt. No. 19 at 41). Nevertheless, in November 2019, Dr. Corbett failed the ABA Basic Exam once again, scoring in the bottom 2 percent. *Id.* at 39.

During her time in the program, Dr. Corbett also showed other performance deficiencies. For instance, she had difficulty passing the United States Medical Licensing Examination Step 3 test, ultimately passing it on her third attempt. *Id.* at 11, 26–27. Additionally, Dr. Corbett struggled on her ABA In-Training Exams. *Id.* at 11, 28–30. In December 2018, Dr. Santos also received an evaluation from a physician at Dallas Children's Hospital who had overseen Dr. Corbett during a rotation at that medical care facility. *Id.* at 34, 79–80. The physician expressed his department's "serious concerns"

about Dr. Corbett's performance and understanding of basic concepts of anesthesiology.  *Id.* at 79–80.

### C.    Dr. Corbett's Dismissal, Complaint to the Office of Equal Opportunity, and Appeal of Dismissal Recommendation

On December 10, 2019, Dr. Corbett received the Notice of Recommendation for Dismissal.  *Id.* at 45.  The notice informed her that the program faculty had recommended that she "be dismissed as a resident for deficiency in medical knowledge," noting that she had failed the ABA Basic Exam for the fourth time.  *Id.*  The notice informed her that Dr. Steven Berk, the Dean of the School of Medicine, would make the final decision and that she had 5 business days to appeal the recommendation.  *Id.*

On December 17, 2019, Dr. Corbett filed an appeal of the recommendation of dismissal.  *Id.* at 51.  She claimed that she had been discriminated against on the basis of her sex.  *Id.*  Dr. Corbett was advised to file a complaint with the Texas Tech University System Office of Equal Opportunity (OEO), which would investigate her complaint.  *Id.*  Dr. Corbett subsequently filed a complaint, and the appeals process related to her dismissal from the ARP was put on hold pending the OEO's investigation and determination.  *Id.*  Dr. Corbett complained that Dr. Santos "treated her worse than her male colleagues because she is female.  She alleged that he harassed her and created a hostile work environment in an attempt to get her (a woman) out of the program."  *Id.*  She also "claimed that Dr. Santos' verbal conduct created an intimidating, hostile, and offensive working and educational environment."  *Id.*

On April 15, 2020, the OEO issued the Confidential Memorandum detailing its investigation and findings and conclusions, ultimately concluding that no discrimination had occurred.  *Id.* at 50–78.  The investigator gathered and reviewed information and

"interviewed twenty-five people, including Dr. Corbett and Dr. Santos[,] . . . all six female faculty members in the Department of Anesthesiology, four female residents/former residents, and three other females including a faculty member, hospital administrator, and residency program coordinator." *Id.* at 48–49, 51–74.  The OEO "found no evidence to support Dr. Corbett's allegations of discrimination or harassment based on gender or her claims that Dr. Santos' conduct was sufficiently severe or pervasive that it created an intimidating, hostile, and offensive working and educational environment based on her sex." *Id.* at 75.

Once the OEO's investigation concluded, the ad hoc appeal subcommittee moved forward with Dr. Corbett's appeal of her dismissal recommendation and held a hearing on April 30, 2020.  *Id.* at 5–9.  Dr. Corbett had legal counsel present.  *Id.* at 5.  The subcommittee reviewed the submitted documents, heard each party's presentation of evidence, including witness statements, and then deliberated in a closed session.  *Id.*  After deliberation, "the subcommittee unanimously agreed that the anesthesiology residency followed, afforded, and even went beyond normally provided due process under the published program and institutional policies."  *Id.*  The subcommittee determined that the ARP's recommendation to dismiss Dr. Corbett should be upheld.  *Id.* at 5, 9.  One week later, on May 11, 2020, Dr. Corbett was notified that Dean Berk had upheld the recommendation decision and that she had been dismissed from the ARP.  *Id.* at 47.

### D.    Dr. Corbett's EEOC Charge and Lawsuit

On March 31, 2020, Dr. Corbett filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC).  *Id.* at 86.  She alleged that she had been discriminated and retaliated against and subjected to a hostile work environment on the

basis of her sex.  *Id.*  The EEOC issued its Dismissal and Notice of Rights, explaining that it was closing its file on this charge and would not be proceeding with its investigation.  Dkt. No. 24-1 at 60.  The EEOC explained that it made "no determination about whether further investigation would establish violations of the statute," noting that the notice "d[id] not mean the claims have no merit" or "certify that the respondent is in compliance with the statutes."  *Id.*  The EEOC also provided Dr. Corbett with notice of her suit rights.  *Id.* at 60–61.

Dr. Corbett then filed suit against TTUHSC in the 237th District Court in Lubbock County, Texas, bringing claims for sex discrimination, retaliation, and gender discrimination pursuant to Title VII and the Texas Commission on Human Rights Act (TCHRA).  Dkt. No. 1-6 at 1–16.  TTUHSC removed the case to the Lubbock Division of the Northern District of Texas.  Dkt. No. 1 at 1–3.

TTUHSC has moved for summary judgment on all of Dr. Corbett's claims.  Dkt. No. 17.  TTUHSC argues that (1) it is entitled to sovereign immunity for Dr. Corbett's request for punitive damages under Title VII (Dkt. No. 18 at 20); (2) Dr. Corbett's TCHRA claims are barred by Eleventh Amendment immunity (*id.* at 20–21); (3) Dr. Corbett's disparate treatment claim fails because she cannot meet the prima facie case or raise a genuine issue of material fact as to pretext (*id.* at 22–30); (4) Dr. Corbett's retaliation claim fails because she cannot establish a prima facie case or raise a genuine issue of material fact as to pretext (*id.* at 30–33); and (5) Dr. Corbett's hostile work environment claim fails because Dr. Santos's treatment of her was not sufficiently severe to constitute harassment and, even if it was, Dr. Santos was equally abrasive towards men, so Dr. Corbett cannot show that his actions were based on her gender (*id.* at 33–36).  Dr. Corbett responded (Dkt.

No. 22), stating that she no longer seeks punitive damages against TTUHSC under Title VII (Dkt. No. 25 at 6) and opposing TTUHSC's summary-judgment arguments (*id.* at 13–23). She also raised several evidentiary objections.  *Id.* at 7–12.  TTUHSC replied.  Dkt. No. 26. TTUHSC also moved to strike portions of Dr. Corbett's summary-judgment evidence (Dkt. No. 27), to which Dr. Corbett did not respond.  Previously, the Court notified the parties that it would grant the motion for summary judgment in part.  Dkt. No. 37.  This memorandum opinion provides more explanation for that decision.

**2.    Legal Standards**

   **A.    Summary Judgment**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A genuine dispute of material fact exists if a reasonable jury could enter a verdict for the non-moving party."  *Doe v. Edgewood Indep. Sch. Dist.*, 964 F.3d 351, 358 (5th Cir. 2020).  The moving party "bears the initial responsibility of demonstrating the absence of a genuine issue of material fact."  *Jones v. United States*, 936 F.3d 318, 321 (5th Cir. 2019) (cleaned up).  Thus, the moving party must "identify[] those portions of [the record] which it believes demonstrate [that] absence."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In evaluating a summary-judgment motion, the Court draws all reasonable inferences in the light most favorable to the nonmoving party.  *Darden v. City of Fort Worth*, 880 F.3d 722, 727 (5th Cir. 2018).  However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). "A fact is material if its resolution could affect the outcome of the action." *Dyer v. Houston*, 964 F.3d 374, 379 (5th Cir. 2020) (citation and internal quotation marks omitted). The Court must consider materials cited by the parties, but it may also "consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

"Where the nonmovant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 301–02 (5th Cir. 2020) (citation and internal quotation marks omitted). The movant, however, does not need to "negate the elements of the nonmovant's case." *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 (5th Cir. 2017) (emphasis omitted) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1076 n.16 (5th Cir. 1994)).

When the moving party has met its burden, "the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings." *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010). Rather, the nonmovant must identify specific evidence in the record and articulate how the evidence supports its claim. *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014); *see also* Fed. R. Civ. P. 56(c)(1)(A). "This burden will not be satisfied by some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation and internal quotation marks omitted). Additionally, Rule 56 does not impose a duty on the Court to "sift through the record in search of evidence to support" the nonmovant's opposition to the

motion for summary judgment.  *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).

"A failure on the part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists."  *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006).  If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, the Court must grant summary judgment.  *Celotex*, 477 U.S. at 322–23.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and internal quotation marks omitted).

## B.      The Texas Commission on Human Rights Act

The TCHRA addresses employment discrimination, retaliation, and hostile work environment on the basis of sex.  Tex. Lab. Code §§ 21.051, 21.055; *see Cain v. Blackwell*, 246 F.3d 758, 760 (5th Cir. 2001); *Soto v. El Paso Nat. Gas Co.*, 942 S.W.2d 671, 677–78 (Tex. App.—El Paso 1997, writ denied).  The TCHRA "is modeled after federal civil rights law," (*NME Hosps., Inc. v. Rennels*, 994 S.W.2d 142, 144 (Tex. 1999)), and one of its stated purposes is to "provide for the execution of the policies of Title VII of the Civil Rights Act of 1964."  Tex. Lab. Code § 21.001(1).  Accordingly, Texas courts use "analogous federal statutes and the cases interpreting them" for guidance when applying the TCHRA. *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 476 (Tex. 2001); *see also Hoffmann-LaRoche Inc. v. Zeltwanger*, 144 S.W.3d 438, 446 (Tex. 2004) (explaining that "federal case law may be cited as authority in cases relating to the [TCHRA]").

– 10 –

When deciding an issue of Texas law, federal courts follow the lead of Texas courts. *Myers v. Crestone Int'l, LLC*, 121 F. App'x 25, 28 (5th Cir. 2005); *see also Rodriguez v. ConAgra Grocery Prods., Co.*, 436 F.3d 468, 474 (5th Cir. 2006) ("As must federal diversity courts when deciding an issue of state law, we will follow the Texas courts' lead.").  Thus, because Texas courts look to and apply federal precedent, federal courts analyzing TCHRA claims apply federal precedent as well.  *Arismendez v. Nightingale Home Health Care, Inc.*, 493 F.3d 602, 606–07 (5th Cir. 2007); *see Bugos v. Ricoh Corp.*, No. 07-20757, 2008 WL 3876548, at *3 (5th Cir. Aug. 21, 2008).  Nevertheless, where Title VII conflicts with TCHRA, the text of the TCHRA will control.  *Tex. Dep't of Transp. v. Lara*, 577 S.W.3d 641, 650 (Tex. App.—Austin 2019, pet. granted) ("Yet while the courts of Texas must look to federal interpretation of Title VII . . . for guidance on our interpretation of the TCHRA, we consider that guidance at the expense of the statute itself." (internal citation omitted)), *aff'd in relevant part* 625 S.W.3d 46, 58 (Tex. 2021).

### 3.    Analysis

####      A.    TTUHSC waived sovereign immunity when it removed the case from state court to federal court.

TTUHSC first argues that Dr. Corbett's TCHRA claims are barred because TTUHSC has Eleventh Amendment immunity.  Dkt. No. 18 at 20–21.  If the Court "lacks the statutory or constitutional power to adjudicate the case," the Court must dismiss the case for lack of subject matter jurisdiction.  *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citation omitted).  The plaintiff bears the burden of proof that the Court has jurisdiction.  *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).  Under the Eleventh Amendment, "[a]bsent waiver, neither a State nor agencies acting under its control may be subject to suit in federal court."  *P.R. Aqueduct &*

– 11 –

*Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993) (citation and internal quotation marks omitted).  The parties do not contest that TTUHSC is a state entity and is thus entitled to Eleventh Amendment immunity.  *See* Tex. Educ. Code ch. 110; Dkt. No. 18 at 21; Dkt. No. 25 at 13–14.

Nevertheless, as Dr. Corbett points out (Dkt. No. 25 at 13–14) and TTUHSC does not contest in its reply (*see* Dkt. No. 26), TTUHSC waived sovereign immunity from a TCHRA suit when it removed this case to federal court.  As the Supreme Court has previously explained, "a State waives [sovereign] immunity when it removes a case from state court to federal court."  *Lapides v. Bd. of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613, 618–19, 624 (2002) ("We conclude that the State's action joining the removing of this case to federal court waived its Eleventh Amendment immunity . . . .").  Following this principle, the Fifth Circuit concluded in another case that the defendants, including Texas Tech University Health Sciences Center at El Paso, had waived sovereign immunity for TCHRA claims when they removed the case from state court to federal court.  *Zeng v. Tex. Tech Univ. Health Sci. Ctr. at El Paso*, 836 F. App'x 203, 207–08 (5th Cir. 2020).  Likewise, here, TTUHSC has waived sovereign immunity by removing the case to federal court.  *See* Dkt. No. 1.

### B.   The Court grants summary judgment as to Corbett's sex-discrimination claim because she fails to meet her prima facie case.

Dr. Corbett alleges that TTUHSC discriminated against her on the basis of sex when it dismissed her from the ARP, pointing to circumstantial evidence.  Dkt. No. 25 at 18–19.  Specifically, Dr. Corbett argues that she was treated less favorably than similarly situated males who did not pass the ABA Basic Exam but were not recommended for dismissal.  *Id.* at 19.  As Dr. Corbett points out, discrimination claims based on circumstantial evidence

are analyzed under the *McDonnell Douglas* burden-shifting framework.  *Id.* at 18; *Hassen v. Ruston La. Hosp. Co.*, 932 F.3d 353, 356 (5th Cir. 2019) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).  Under the *McDonnell Douglas* framework, the plaintiff must first make out a prima facie case of discrimination.  *Hassen*, 932 F.3d at 356.  "Establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee."  *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 254 (1981).

    If the plaintiff meets her initial burden of satisfying the elements of the prima facie case, then the burden of production shifts to the defendant to establish a "legitimate, nondiscriminatory reason" for its adverse employment action.  *Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 512 (5th Cir. 2001) (quoting *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 142 (2000)).  In order to meet this burden, the defendant "must provide both 'clear and reasonably specific reasons' for its actions," (*id.* at 513 (quoting *Burdine*, 450 U.S. at 258)), using admissible evidence to support the defendant's nondiscriminatory reason.  *Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 236 (5th Cir. 2016); *Hervey v. Miss. Dep't of Educ.*, 404 F. App'x 865, 868 (5th Cir. 2010).  "If the employer is able to articulate a reason, 'the presumption raised by the prima facie case is rebutted and drops from the case.'"  *Squyres v. Heico Cos., L.L.C.*, 782 F.3d 224, 231 (5th Cir. 2015) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993)).

    If the defendant satisfies this burden, "then the burden shifts back to the plaintiff to make an ultimate showing of intentional discrimination."  *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 439 (5th Cir. 2012).  Under Title VII and the TCHRA, the plaintiff must establish by a preponderance of the evidence that "either (1) the reason stated by the employer was a

– 13 –

pretext for discrimination, or (2) the defendant's reason, while true, was only one reason for its conduct and discrimination is another motivating factor." *Id.* at 439–40; *see Wittmer v. Phillips 66 Co.*, 915 F.3d 328, 332 (5th Cir. 2019).

TTUHSC argues that it is entitled to summary judgment as to Dr. Corbett's claims because she cannot meet her prima facie case. Dkt. No. 18 at 23–27. To establish a prima facie claim of gender discrimination under Title VII and, consequently, the TCHRA, the plaintiff must show that she (1) is a member of a protected group; (2) was qualified for her position; (3) suffered an adverse employment action by the employer; and (4) was either replaced by someone outside of her protected group or treated less favorably than other similarly situated employees outside of her protected group. *Owens v. Circassia Pharms., Inc.*, 33 F.4th 814, 825 (5th Cir. 2022); *Ross v. Judson Indep. Sch. Dist.*, 993 F.3d 315, 321–22 (5th Cir. 2021); *see also Bauer v. Albemarle Corp.*, 169 F.3d 962, 966 (5th Cir. 1999).

The parties do not dispute that Dr. Corbett meets the first and third elements. *See* Dkt. No. 18 at 23–27; Dkt. No. 25 at 18–19. Dr. Corbett is a female. Dkt. No. 25-1 at 2. She was recommended for dismissal from the ARP (Dkt. No. 19 at 45), the subcommittee determined that the recommendation should be upheld (*id.* at 5–9), and the Dean of the School of Medicine ultimately dismissed her from the program (*id.* at 47).

Nevertheless, TTUHSC argues that Dr. Corbett cannot meet the second and fourth elements. Dkt. No. 18 at 23–27. Specifically, Dr. Corbett was not qualified for her position because she failed the ABA Basic Exam four times. *Id.* at 25–26. In addition, she cannot point to a similarly situated male who received more favorable treatment. *Id.* at 26. The Court agrees.

### i.      Dr. Corbett did not remain qualified for her position because she could not pass the ABA Basic Exam.

The Court finds that Dr. Corbett cannot meet the second element of her prima facie case because she cannot show that she remained qualified for her position.  As stated in the Amendment to the 2019–2020 Graduate Medical Education Agreement between Dr. Corbett and TTUHSC, in order for Dr. Corbett to remain in the program and proceed to the CA-3 or PGY 4 year, she would need to pass the ABA Basic Exam on her fourth attempt. Dkt. No. 19 at 24.  She "acknowledge[d] that a fourth failed attempt on the ABA Basic Exam [would] demonstrate a significant deficiency in medical knowledge and . . . result in an immediate recommendation for dismissal from the program." *Id.*

Precedent provides helpful guidance.  In *Sreeram v. Louisiana State University Medical Center-Shreveport*, the Fifth Circuit considered a similar situation, ultimately concluding that a third-year surgical resident who had been expelled from her program had "failed to establish that she was qualified for the position in question at all relevant times." 188 F.3d 314, 318 (5th Cir. 1999).  While the plaintiff in that case had shown an ability to perform under test conditions, she had received negative surgical evaluations, which demonstrated that she was unable to perform under real working conditions.  *Id.*  Because the plaintiff had met some qualifications but not others, the court concluded that she failed to show she had remained qualified for her position.  *Id.* at 318–20.

Here, Dr. Corbett was aware that passing the ABA Basic Exam was a qualification for continuing in the ARP but ultimately failed to satisfy that qualification.  Dkt. No. 19 at 24.  Dr. Corbett contests this argument, pointing to her ABA evaluation for the January– June 2019 reporting period and arguing that she "received satisfactory grades."  Dkt. No. 25 at 19 (citing Dkt. No. 25-1 at 107–109).  But that evaluation also gave her an

"Unsatisfactory" score for her Basic Exam Performance, resulting in an "Unsatisfactory" Overall Clinical Competence score.  Dkt. No. 25-1 at 109.  Similar to the plaintiff in *Sreeram*, although Dr. Corbett is able to show that she met certain qualifications, she fails to demonstrate that she met other qualifications.  Ultimately, then, Dr. Corbett fails to establish that she was qualified for her position at all relevant times.  *See Sreeram*, 188 F.3d at 318–20.  Because she fails to meet an element of her prima facie case, summary judgment in favor of TTUHSC is warranted.

### ii.  Dr. Corbett fails to point to a proper comparator and show that she was treated less favorably than him.

Additionally, because Dr. Corbett has not shown that a similarly situated male was treated more favorably than her, she fails to meet the fourth element of her prima facie case. She is unable to point to a male ARP resident who, as a proper comparator, was not dismissed from the ARP after failing the ABA Basic Exam several times like her.  *See* Dkt. No. 25 at 19.

"To satisfy the 'similarly situated' prong, the employee carries out a comparator analysis." *Saketkoo v. Adm'rs of the Tulane Educ. Fund*, 31 F.4th 990, 998 (5th Cir. 2022) (citing *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009)).  The plaintiff must identify appropriate comparator employees who are outside of the plaintiff's protected class and "produce evidence that they were similarly situated employees." *Owens*, 33 F.4th at 827 (cleaned up) (quoting *Okoye*, 245 F.3d at 515).  The plaintiff must "demonstrate that any of the employment actions 'were taken under nearly identical circumstances'" and that the comparator employee or employees "shared the same job or responsibilities, reported to the same supervisor, had 'essentially comparable violation histories[,]'" and engaged in nearly identical conduct that drew the employer's adverse employment action. *Hernandez v. Yellow*

*Transp., Inc.*, 670 F.3d 644, 659 (5th Cir. 2012) (quoting *Lee*, 574 F.3d at 260).  The plaintiff must also demonstrate that the employer did treat the employees differently.  *See Lee*, 574 F.3d at 262.  While the question of whether an employee is an appropriate comparator is a question of fact for the jury (*see Perez v. Tex. Dep't of Crim. Just., Institutional Div.*, 395 F.3d 206, 215 (5th Cir. 2004)), the question of whether a reasonable factfinder could find that the plaintiff is similarly situated to the comparator employee is a question of law (*see, e.g.*, *Owens*, 33 F.4th at 827–28; *Vaughn v. Woodforest Bank*, 665 F.3d 632, 640 (5th Cir. 2011)).

The Fifth Circuit has defined "similarly situated employees narrowly" in the context of Title VII discrimination claims.  *Eyob v. Mitsubishi Caterpillar Forklift Am., Inc.*, 745 F. App'x 209, 213 (5th Cir. 2018).  In *Lee*, for instance, the Fifth Circuit recognized that employees (1) with different supervisors; (2) who work in different divisions of a company; (3) who faced an adverse employment action too remote in time from that taken against the plaintiff; (4) with different work responsibilities; or (5) with different violations will not be deemed similarly situated.  *Lee*, 574 F.3d at 259–60.  However, "nearly identical" is not synonymous with "identical," so the situations of the plaintiff and the comparator employee do not need to be totally or completely identical, only "nearly identical."  *Id.* at 260.  "For example, it is sufficient that the ultimate decisionmaker as to employees' continued employment is the same individual, even if the employees do not share an immediate supervisor."  *Id.* at 260–61.  Additionally, "[e]ach employee's track record at the company need not comprise the identical number of identical infractions," but "these records must be comparable."  *Id.* at 261.

Here, Dr. Corbett fails to carry out any kind of comparator analysis or otherwise show that another current or former ARP resident was a similarly situated employee.  *See*

Dkt. No. 25 at 19.  While she does point to two males who were in the ARP program and allegedly failed the ABA Basic Exam (Dkt. No. 25-1 at 6), Dr. Corbett does not point to any evidence to show they failed the exam more than once—much less that their records are comparable to her four failing scores (Dkt. No. 25 at 19).  To the contrary, no other student in the program's history has failed the exam four times.[1]  Dkt. No. 19 at 4.  Therefore, Dr. Corbett is the only person in the ARP's history to have received as many opportunities to pass the exam as she did and still fail.  *See id.*  Because she cannot point to a proper comparator, show a comparable track record, and demonstrate that the male received an opportunity to remain in the ARP, Dr. Corbett fails to meet the fourth element of her prima facie case.  Therefore, the Court grants summary judgment in favor of TTUHSC as to Dr. Corbett's sex-discrimination claim.

---

[1] Dr. Corbett objects to ¶ 24 of Dr. Cooper Phillips's affidavit (Dkt. No. 25 at 9), which states that "[n]o other resident in TTUHSC's ARP has failed the ABA Basic Exam four times" (Dkt. No. 19 at 4).  She argues that the "statement fails to show that it is based on the affiant's personal knowledge."  Dkt. No. 25 at 9.  The Court overrules this objection.

At the outset, the Court notes that Dr. Phillips's affidavit states that he made these statements with "personal knowledge of the matters contained in[side]."  Dkt. No. 19 at 2.  In any event, as the Fifth Circuit has made clear, "there is no requirement for a set of magic words."  *SE Prop. Holdings, L.L.C. v. Green (In Re Green)*, 968 F.3d 516, 523–24 (5th Cir. 2020) (quoting *DIRECTV, Inc v. Budden*, 420 F.3d 521, 530 (5th Cir. 2005)).  "[P]ersonal knowledge can be inferred if such knowledge reasonably falls within the person's 'sphere of responsibility.'"  *Id.* at 524 (citation omitted); *see also RBC Real Estate Fin., Inc. v. Partners Land Dev., Ltd.*, 543 F. App'x 477, 479 (5th Cir. 2013) (concluding that an affiant had personal knowledge as required by Federal Rule of Civil Procedure 56(c)(4) where he testified about information that he was "responsible for monitoring and collecting").  As Dr. Phillips explains in his affidavit, he has "authority and accountability for the operation of the program and responsibilities that encompass every aspect of postgraduate medical training, including assessing and documenting the competency of each resident and ensuring patient safety."  Dkt. No. 19 at 2.  As part of his responsibilities, then, Dr. Phillip has personal knowledge of how many times Dr. Corbett and other students failed the ABA Basic Exam.

**C.      The Court grants summary judgment as to Dr. Corbett's retaliation claim because she cannot make a prima facie case of retaliation or raise a genuine issue of material fact as to pretext.**

TTUHSC argues that Dr. Corbett has not shown a prima facie case of retaliation or raised a genuine issue of material fact as to pretext.  Dkt. No. 18 at 30–33.  Dr. Corbett relies on two arguments to support her retaliation claim.  Dkt. No. 25 at 20–23.  First, TTUHSC allegedly retaliated against her when the appeal subcommittee determined that the dismissal recommendation should be upheld a few months after she filed a complaint with the OEO.  *Id.* at 21.  Second, TTUHSC retaliated against her when, months after Dr. Corbett filed charges of discrimination with the EEOC, Dr. Santos allegedly failed to forward calls from Dr. Corbett's prospective employers and reference checkers to the Graduate Medical Education Department to verify Dr. Corbett's residency.  *Id.* at 22–23; Dkt. No. 25-1 at 118.  The Court finds that Dr. Corbett has not shown a prima facie case of retaliation, much less raised a genuine issue of material fact as to pretext, so it grants summary judgment on this claim.

"To establish a *prima facie* case of retaliation, [the plaintiff] must show that: (1) she participated in an activity protected by Title VII; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the materially adverse action."  *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 484 (5th Cir. 2008); *see Jenkins v. City of San Antonio Fire Dept.*, 784 F.3d 263, 269 (5th Cir. 2015).  "If the plaintiff makes a prima facie showing, the burden then shifts to the employer to articulate a legitimate[,] [] non-retaliatory reason for its employment action."  *Aryain*, 534 F.3d at 484 (citation omitted).  Then, "[i]f the employer meets this burden of production, the

plaintiff . . . bears the burden of proving that the employer's reason is a pretext for the actual retaliatory reason." *Id.*

This third step "requires a greater showing than mere causal connection" and asks whether the protected activity "was a 'but for' cause of the adverse employment decision." *Owens*, 33 F.4th at 835 (quoting *Long v. Eastfield Coll.*, 88 F.3d 300, 305 n.4 (5th Cir. 1996)). The plaintiff must show that the "protected conduct was *the* reason for the adverse action." *Id.* (emphasis in original). "In other words, even if a plaintiff's protected conduct is a substantial element in a defendant's decision to terminate an employee, no liability for unlawful retaliation arises if the employee would have been terminated even in the absence of the protected conduct." *Id.* (quoting *Long*, 88 F.3d at 305 n.4).

### i. Dr. Corbett fails to establish a causal link between the complaint she filed and the appeal subcommittee's decision that the dismissal recommendation should be upheld and does not raise a genuine issue of material fact as to pretext.

Dr. Corbett alleges that TTUHSC retaliated against her when the appeal subcommittee concluded that the decision to recommend dismissal should be upheld after she had filed a complaint with the OEO.  Dkt. No. 25 at 21.  TTUHSC argues, however, that Dr. Corbett failed to establish a causal link because adverse job actions began before Dr. Corbett had engaged in any protected activity.  Dkt. No. 18 at 30–33.  In response, Dr. Corbett argues that a causal connection between the protected activity—Dr. Corbett's complaint with the OEO—and the adverse employment action exists because "TTUHSC was aware that [Dr. Corbett] had filed a complaint with the OEO . . . when it upheld the recommendation of [her] dismissal."  Dkt. No. 25 at 21.

As other courts have repeatedly explained, however, a "plaintiff's protected activity after [her] misconduct . . . does not establish a causal connection between the protected

activity and the [dismissal]." *Crisp v. Sears Roebuck & Co.*, No. SA–13–CA–962–PM, 2015 WL 12977378, at *14 (W.D. Tex. Mar. 4, 2015). "A plaintiff cannot use the threat of a discrimination lawsuit to immunize herself from the reasonable and foreseeable consequences of her misconduct." *Linehan v. Univ. of Tex. at Tyler*, No. 6:16-CV-00066-RWS, 2017 WL 8810745, at *3 (E.D. Tex. 2017) (cleaned up) (quoting *Saenger v. Montefiore Med. Ctr.*, 706 F. Supp. 2d 494, 519 (S.D.N.Y. 2010)), *R. & R. adopted by* 2018 WL 703246 (E.D. Tex. Feb. 5, 2018). For instance, where "gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity," an inference of causation based on temporal proximity does not arise. *Finch v. Tex. Health & Hum. Servs. Comm'n*, No. H–13–3716, 2015 WL 5674834, at *6 (S.D. Tex. Sept. 25, 2015) (quoting *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001)). In addition, evidence indicating that an employer was dissatisfied with the plaintiff's performance before the plaintiff engaged in protected activity does not support an inference of a causal link based on temporal proximity. *See Brod v. Sprint Corp. & Sprint/United Mgmt. Co.*, No. 4:20-CV-1854, 2022 WL 479521, at *8 (S.D. Tex. Jan. 28, 2022). Ultimately, "[t]he mere fact that some adverse action is taken after an employee engages in some protected activity will not always be enough for a prima facie case." *Owens*, 33 F.4th at 835 (emphasis omitted) (quoting *Swanson v. GSA*, 110 F.3d 1180, 1188 n.3 (5th Cir. 1997)).

Here, the misconduct that the appeal subcommittee relied on in deciding that Dr. Corbett's recommendation dismissal should be upheld—Dr. Corbett's fourth failure of the ABA Basic Exam—occurred before Dr. Corbett filed her complaint with the OEO. Dkt. No. 19 at 5–9. In addition, TTUHSC made Dr. Corbett aware of its dissatisfaction with her performance and warned her of the beginning of gradual adverse job action when she signed

the amendments—which occurred long before she filed her complaint. *Id.* at 23–25. Both amendments explicitly stated that failure of the ABA Basic Exam for the third and fourth time would result in the recommendation of her dismissal because those failures would "demonstrate a significant deficiency in medical knowledge" (*id.* at 23–24), and the fourth amendment withheld all clinical privileges (*id.* at 24). In fact, Dr. Corbett did not even file her complaint until after she had been notified of the recommendation for dismissal. *Id.* at 51. Dr. Corbett cannot immunize herself from the results of her misconduct—including the recommendation of her dismissal and the appeal subcommittee's subsequent conclusion that the recommendation should be upheld—by engaging in protected activity. *See Linehan*, 2017 WL 8810745, at *3.

Even if Dr. Corbett could make a prima facie case, however, TTUHSC has proffered a legitimate, nondiscriminatory reason for why the subcommittee concluded that the recommendation should be upheld. As stated in the Notice of Recommendation for Dismissal, the ARP had received the results of Dr. Corbett's fourth failed attempt at the ABA Basic Exam. Dkt. No. 19 at 45. In accordance with the amendment that she had signed and because she had demonstrated a "deficiency in medical knowledge," she was recommended for dismissal. *Id.* In the appeal subcommittee's Report of Findings and Recommendations, the subcommittee noted that "Dr. Corbett's fund of knowledge as evidenced by the ABA [Basic] [Exam] was inadequate" and that her "[t]est scores, even on the [fourth] attempt, were significantly below passing." Dkt. No. 19 at 9. Therefore, the burden would shift to Dr. Corbett to show that her protected conduct was a but-for cause of the appeal subcommittee's determination that the dismissal recommendation should be upheld.

– 22 –

Dr. Corbett fails to raise a genuine issue of material fact as to pretext because she relies solely on a conclusory statement. Dr. Corbett simply argues that "TTUHSC would not have upheld the recommendation for dismissal merely because [Dr. Corbett] failed the ABA Basic Exam on her [fourth] attempt. Rather, TTUHSC upheld the recommendation because [Dr. Corbett] filed a complaint with the OEO." Dkt. No. 25 at 22. Dr. Corbett points to no evidence to support this assertion. "Conclusory statements are not competent evidence to defeat summary judgment"; the plaintiff "must offer specific evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 345–46 (5th Cir. 2007). Dr. Corbett does not point to any evidence to show that her complaint with the OEO was the reason the appeal subcommittee determined that the dismissal recommendation should be upheld. *See Owens*, 33 F.4th at 835. Therefore, this retaliation argument fails at the pretext stage, too.

> ### ii. Dr. Corbett lacks evidentiary support and fails to show that Dr. Santos's alleged failure to refer phone calls is a materially adverse action sufficient to meet the prima face case.

Dr. Corbett also alleges that Dr. Santos failed to refer phone calls he received from prospective employers and reference-checking companies that she had hired to the Graduate Medical Education Department. Dkt. No. 25 at 22–23 Dkt. No. 25-1 at 118. Dr. Corbett relies on portions of her declaration and a document allegedly from one of the reference-checking companies to support her claim labeled as P-Tab 7. Dkt. No. 25 at 22–23 (citing Dkt. No. 25-1 at 3–4, 120–21). TTUHSC objects to the declaration because, among other arguments, some of the statements included in the declaration are hearsay. Dkt. No. 27 at 1–2. TTUHSC also objects to P-Tab 7, alleging that the document is not properly authenticated and should therefore be struck from the record. *Id.* at 2. Finally, TTUHSC argues that Dr. Santos's alleged conduct does not amount to a materially adverse action

sufficient to support a claim of retaliation.  Dkt. No. 18 at 31-32; Dkt. No. 26 at 5 n.1.  The

Court sustains TTUHSC's objections to the evidence and finds, in any event, that Dr.

Corbett has not shown that Dr. Santos's alleged conduct is a materially adverse action,

resulting in her failing to make a prima facie claim.  Therefore, summary judgment as to this

claim is granted in TTUHSC's favor.

### a.   The Court strikes paragraphs 32, 33, 34, and 37 of Dr. Corbett's declaration as hearsay.

TTUHSC objects to Dr. Corbett's affidavit because some of the statements constitute

hearsay.  Dkt. No. 27 at 1–2.  "Under Federal Rule of Civil Procedure 56, an affidavit must

'set out facts that would be admissible in evidence.'"  *Jennings v. Dall. Hous. Auth.*, No. 3:20-

cv-03462-M , 2022 WL 487914, at *2 (N.D. Tex. Feb. 17, 2022) (Lynn, C.J.) (quoting Fed.

R. Civ. P. 56(c)) (concluding that statements made by a coworker about statements made by

plaintiff's "supervisor are double hearsay and inadmissible").  "Evidence on summary

judgment may be considered to the extent not based on hearsay or other information

excludable at trial."  *Fowler v. Smith*, 68 F.3d 124, 126 (5th Cir. 1995).

Paragraphs 32, 33, 34, and 37 include statements that Patriot Placement &

Recruitment, LLC and Allison & Taylor, Inc. told Dr. Corbett, which she then relays.  Dkt.

No. 25-1 at 3–4.  These statements that Dr. Corbett has shared are out-of-court statements

being offered for the truth of the matter asserted and thus constitute hearsay.  Therefore, the

Court sustains TTUHSC's objection to these portions.

### b.   The Court strikes P-Tab 7 because it has not been properly authenticated.

TTUHSC also objects to P-Tab-7—the Allison & Taylor, Inc. Professional Reference

Report (Dkt. No. 25-1 at 1)—because, among other arguments, the document has not been

authenticated. "Federal Rule of Evidence 901(a) states that the requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." *R.R. Mgmt. Co. v. CFS La. Midstream Co.*, 428 F.3d 214, 219 (5th Cir. 2005) (cleaned up). "While a document cited as summary judgment evidence is most commonly authenticated by affidavit, any method of authentication available under the Federal Rules of Evidence will suffice." *Sport Supply Grp., Inc. v. Savage*, No. 3:10-cv-913-O, 2011 WL 13234197, at *5 (N.D. Tex. Dec. 22, 2011). Some evidence may be self-authenticating under Federal Rule of Evidence 902. *Id.* Some evidence may also be authenticated by distinctive looking characteristics, such as the document's appearance, contents, and substance. *Carter v. H2R Restaurant Holdings, LLC.*, 2017 WL 3704688, at *4 (N.D. Tex. July 20, 2017). In addition, a document may also be authenticated when (1) it was produced in discovery by the opposing party; (2) it bears the opposing party's signature; (3) the opposing party does not "claim that the document is not authentic or that [the] signature is a forgery"; and (4) the opposing party acknowledges the truth of the facts contained in the produced record in its dispositive-motion briefing. *McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 562 (5th Cir. 1998).

The Fifth Circuit has held that a district court did not abuse its discretion when it excluded an exhibit because there were no indicia of authenticity within the exhibit itself or other evidence on the record authenticating the exhibit. *R.R. Mgmt. Co.*, 428 F.3d at 220. The Fifth Circuit has also concluded that summary judgment evidence was properly excluded where the plaintiff "made no viable arguments to the district court as to the admissibility of the document or its contents, and . . . never explained how he would put the

otherwise inadmissible evidence into an admissible form for trial." *Campos v. Steves & Sons, Inc.*, 10 F.4th 515, 522 (5th Cir. 2021).

Here, P-Tab 7 does not fall under any of the self-authenticating categories of Fed. R. Evid. 902, nor is it otherwise properly authenticated under Rule 901. Dr. Corbett's declaration does not reference the document whatsoever, much less describe what it is or support a finding that the document is what the plaintiff says it is. Dkt. No. 25-1 at 2–5. The document itself has not been signed anywhere and contains no distinguishing contents. *See id.* at 120–21. In fact, the only references to Allison & Taylor, Inc. are inside what appears to be links on the pages. *Id.* The document is not a creation of the defendant or the defendant's agent, either. *See id.* Furthermore, the plaintiff failed to respond to the defendant's motion, much less offer any argument indicating that the document could be authenticated at trial. Because the document has not been authenticated, the Court strikes the document from the record.

> ### c.  Dr. Corbett does not have sufficient evidence to support her allegation that TTUHSC committed a material adverse action.

Dr. Corbett fails to point to any other evidence to support her allegation that Dr. Santos did not respond to or refer the calls from prospective employers and reference checkers. *See* Dkt. No. 25 at 22–23. Unsubstantiated assertions or a mere scintilla of evidence are insufficient to show that there is a genuine issue for trial and defeat summary judgment. *See Boudreaux*, 402 F.3d at 540, 544. Therefore, Dr. Corbett's retaliation claim on this basis fails for insufficient evidence.

> **d.    In any event, Dr. Santos's alleged conduct fails to rise to a materially adverse action, so Dr. Corbett cannot establish a prima facie case.**

Even still, Dr. Santos's alleged conduct fails to rise to a materially adverse action. Dr. Corbett alleges that she suffered an adverse employment action because "Dr. Santos did not return voicemails to refer prospective employers to the Graduate Medical Education Department."  Dkt. No. 25 at 22–23.

"In addition to tangible adverse actions, such as firing an employee, the definition of adverse employment action includes any act which well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Abbt v. City of Houston*, 28 F.4th 601, 610 (5th Cir. 2022) (citation and internal quotation marks omitted).  The Supreme Court has distinguished "material adversity" from "trivial harms," however, noting that "[a]n employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *Grice v. FMC Techns. Inc.*, 216 F. App'x 401, 407 (5th Cir. 2007) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).  Title VII is meant to prohibit "employer actions that are likely 'to deter victims of discrimination from complaining to the EEOC,' the courts, and their employers." *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68 (citation omitted).  "[N]ormally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence." *Id.*

Here, Dr. Corbett fails to raise any argument to show that a reasonable person would have been deterred from complaining or supporting a charge of discrimination.  Dkt. No. 25 at 22–23.  She also does not explain why this harm rises beyond a "trivial level" and amounts to "material adversity." *See id.*  And even if Dr. Santos had received voicemails

and not responded to them, that conduct appears to be more akin to a "minor annoyance[]" or "simple lack of good manners" that "often take[s] place at work." *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68; *Grice*, 216 F. App'x at 407. Therefore, because Dr. Corbett fails to show a prima facie case of retaliation, the Court grants summary judgment in TTUHSC's favor as to this claim.

> **D.    The Court denies summary judgment as to Corbett's hostile work environment claim because there is a genuine issue of material fact as to whether the discriminatory conduct was sufficiently severe or pervasive.**

Finally, Dr. Corbett brings a hostile work environment claim, alleging that Dr. Santos harassed her while she was in the ARP. Dkt. No. 1-6 at 7–8; *see* Dkt. No. 25 at 14–17. TTUHSC argues that summary judgment should be granted in its favor, however, because all of the incidents that she "described are not sufficiently severe or pervasive to sustain her hostile work environment claim" and "Dr. Santos treated male residents in a similarly abrasive manner." Dkt. No. 18 at 35–36. Because Dr. Corbett points to some evidence to support her assertions and there is a genuine issue of material fact as to whether Dr. Santos's comments were severe or pervasive enough to alter the conditions of Dr. Corbett's employment, the Court denies summary judgment as to this claim.

To establish a hostile work environment claim, a plaintiff must show that: (1) "she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based on" the plaintiff's protected class; (4) "the harassment complained of affected a term, condition, or privilege of employment;" and (5) "the employer knew or should have known of the harassment in question and failed to take prompt remedial action." *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002). For harassment to affect a term, condition, or privilege of employment, the conduct must be

"sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* (citation omitted).

Courts consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). The "severe or pervasive" standard is meant to be a "middle path between making actionable any conduct that is merely offensive and requiring the conduct to cause a tangible psychological injury." *Gardner v. CLC of Pascagoula, L.L.C.*, 915 F.3d 320, 325 (5th Cir. 2010) (citing *Harris*, 510 U.S. at 21). The Fifth Circuit has noted that "the test—whether the harassment is severe or pervasive—is stated in the disjunctive." *Lauderdale v. Tex. Dep't of Crim. Just., Institutional Div.*, 512 F.3d 157, 163 (5th Cir. 2007). Thus, on one hand, "[a]n egregious, yet isolated, incident can alter the terms, conditions, or privileges of employment and satisfy the fourth element necessary to constitute a hostile work environment." *Id.* On the other hand, "[f]requent incidents of harassment, though not severe, can reach the level of 'pervasive,' thereby altering the terms, conditions, or privileges of employment such that a hostile work environment exists." *Id.* As such, "the required showing of severity or seriousness of the harassing conduct varies inversely with the pervasiveness or frequency of the conduct." *Id.* (citation omitted). "To get past summary judgment, [the plaintiff] need not make it 'clear' that she was subject to actionable harassment; she of course only needs to show that a jury could reach that conclusion based on its view of the evidence." *Gardner*, 915 F.3d at 325.

TTUHSC first asserts that Dr. Santos's comments regarding women were "sporadic and not severe or pervasive." Dkt. No. 18 at 35. Unless extremely serious, "isolated

incidents" and "offhand comments" do not suffice to alter the terms and conditions of employment. *Shepherd v. Comptroller of Pub. Accts.*, 168 F.3d 871, 874 (5th Cir. 1999) (internal quotation marks and citation omitted). Nevertheless, here, Dr. Corbett does not allege that Dr. Santos made a few or even a handful of comments. In her deposition, Dr. Corbett testified that while she was in the ARP, Dr. Santos "made comments such as not wanting women in the program and that they should stay as nurses" on "at least 10 or 15 occasions." Dkt. No. 25-1 at 52. A reasonable factfinder could find that these comments were pervasive enough.

Moreover, these alleged statements were more than just "simple teasing" comments. *Shepherd*, 168 F.3d at 874 (citation omitted). They explicitly sent the message that the plaintiff was incompetent because of her sex. *See* Dkt. No. 25-1 at 52. Fifth Circuit precedent has highlighted this consideration as a relevant factor in determining the severity and pervasiveness of a defendant's conduct. In *Butler v. Ysleta Independent School District*, the Fifth Circuit explained that a plaintiff had not been subjected to a hostile work environment because, in part, the communication the plaintiff had received did not contain "the message that the plaintiff is incompetent because of her sex." 161 F.3d 263, 270–71 (5th Cir. 1998). The court went on to note that an example of such communication would be "a cartoon suggesting that women are incapable of teaching on account of their sex," which would "undermine the ability of women to teach." *Id.* at 270. Likewise, in *Shepherd*, the Fifth Circuit affirmed a district court's grant of summary judgment, noting, among other factors, that the defendant's "actions did not undermine [the plaintiff's] workplace competence." 168 F.3d at 874.

TTUHSC also asserts that Dr. Santos was similarly abrasive with male residents, too, which indicates that his actions were not based on sex (Dkt. No. 18 at 35–36), but this argument fails.  "The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed."  *Butler*, 161 F.3d at 271 (citation omitted).  As other courts have pointed out, "the fact that both male and female employees are treated similarly, if badly, does give rise to the inference that their mistreatment shared a common cause that was unrelated to their sex."  *Brown v. Henderson*, 257 F.3d 246, 254 (2d Cir. 2001).

Nevertheless, "the inquiry into whether ill treatment was actually sex-based discrimination cannot be short-circuited by the mere fact that both men and women are involved."  *Id.*  For instance, a supervisor could harass a woman on the basis of her sex while abusing men for other reasons unrelated to their sex.  *See Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1464 (9th Cir. 1994).  In addition, as another court has previously noted, for summary judgment purposes, a jury could still conclude that a woman faced harassment while disbelieving other accusations or finding that the alleged harassment against the male "was a non-recurring deviation from a pervasive pattern of same-sex harassment."  *Jones v. Wal-Mart Stores, Inc.*, No. 1:05-CV-121, 2006 WL 8441386, at *17 (E.D. Tex. June 15, 2006).

Here, Dr. Santos's alleged comments were not general rude or demeaning comments; they targeted the competency of women based on their sex.  *See* Dkt. No. 25-1 at 52.  TTUHSC does not point to similar comments that Dr. Santos made towards men that challenged their competency based on sex.  *See* Dkt. No. 18 at 35–36; Dkt. No. 26 at 8–9.  Thus, this case is distinguishable from one in which the defendant engaged in general

abrasive conduct towards both men and women or demeaned both men and women's competency on the basis of sex. *See Saketkoo*, 31 F.4th at 1003–04 (affirming a district court's grant of summary judgment because the plaintiff did not demonstrate that the defendant's degrading actions were based on her sex and the record showed that the defendant had also treated male physicians in a similarly abrasive manner resulting in males complaining).

Therefore, viewing the evidence in the light most favorable to Dr. Corbett, a reasonable factfinder could find that TTUHSC's conduct was sufficiently severe or pervasive and that Dr. Corbett suffered a hostile work environment on the basis of her sex, even if male residents also dealt with abrasive behavior from Dr. Santos. As such, the Court denies summary judgment as to Dr. Corbett's hostile work environment claims.

## 4.     Conclusion

The Court grants summary judgment in TTUHSC's favor as to Dr. Corbett's sex discrimination and retaliation claims because she cannot establish a prima facie case for either claim. Nevertheless, because Dr. Corbett points to evidence—her deposition—to show that Dr. Santos allegedly made comments about not wanting women in the ARP and believing they should only be nurses, not doctors, a genuine issue of material fact exists as to her hostile work environment claim. Therefore, the Court denies summary judgment as to that claim. The parties' remaining evidentiary objections are denied as moot because the Court did not rely on that evidence in making its determination.

So ordered on July 10, 2023.

_____

JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE